UNITED STATES DISTRICT COURT　　　　　　ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
　　　　　　　　　　　　　　　　　　　　　　　:
DAMON LUCKY,　　　　　　　　　　　　　　　: 　MEMORANDUM
　　　　　　　　　　　　　　　　　　　　　　　: 　AND ORDER
　　　　　　　　　　　Petitioner,　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　: 　10-CV-3961 (JG)
　　　　　　-against-　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
UNITED STATES OF AMERICA,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　Respondent.　　　　　　　:
---------------------------------------------------------------X

A P P E A R A N C E S:

　　　DAMON LUCKY
　　　　　　No. 72314-053
　　　　　　USP Big Sandy
　　　　　　P.O. Box 2068
　　　　　　Inez, KY 41224
　　　　　　Petitioner, *pro se*

　　　LORETTA E. LYNCH
　　　　　　United States Attorney for the Eastern District of New York
　　　　　　271 Cadman Plaza East
　　　　　　Brooklyn, NY 11201
　　　By:　　SreeVamshi Reddy
　　　　　　Attorney for Respondent the United States of America

JOHN GLEESON, United States District Judge:

　　　　　　Petitioner Damon Lucky, a federal prisoner serving a ninety-six month sentence, brings this action, *pro se*, for habeas corpus relief under 28 U.S.C. § 2255. After a jury trial before Judge David G. Trager, Lucky was found guilty of being a felon in possession of a firearm. Lucky now claims that his trial counsel was ineffective before trial and at sentencing. Counsel, in fact, made two of the four arguments Lucky claims he did not make. The third and fourth arguments would have been frivolous, and counsel reasonably did not make them. For these reasons, which are discussed further below, Lucky's motion is denied.

BACKGROUND

A.        *The Arrest*

On December 13, 2004, a firefighter observed a man fire a gun at a crowd of people standing on the sidewalk outside the Marcy Houses in Brooklyn. The shooter sped off in a black sport utility vehicle ("SUV") but not before the firefighter noted the license plate number. Based on the license plate number and the firefighter's description, police officers on patrol two days later pulled over the SUV. Lucky was the driver.

The officers could not see through the SUV's darkly tinted windows, so they asked Lucky to roll down the driver's side window. Lucky did not comply. The officers then opened the driver's side door and ordered Lucky out of the vehicle, and again he refused, leading the officers to remove him. As they did so, Lucky appeared to reach for his waist. After handcuffing Lucky, the officers observed a fully-loaded Star nine-millimeter semi-automatic firearm sticking out from Lucky's waistband.

B.        *The Commencement of Judicial Proceedings and Exclusions of Time*

On January 13, 2005, an indictment was filed charging Lucky with a single count of possessing a firearm after having previously been convicted of a felony in violation of sections 922(g)(1) and 924(a)(2) of Title 18 of the United States Code. He was arraigned on January 26 before a magistrate judge, who entered an order of excludable delay until February 23. On that date, Lucky first appeared before Judge Trager. The docket entry for that court appearance reflects that Judge Trager ordered on the record that time be excluded until March 31 with the consent of the parties and in the interest of justice. ECF No. 13.[1] On March 31, Judge Trager scheduled another appearance for May 19 and excluded time until that date, making the

---

[1] All citations in the form "ECF No. ___" are to docket entries in Lucky's criminal case, *United States v. Damon Lucky*, No. 05-CR-33 (DGT).

same findings he made at the previous status conference. ECF No. 14. At the May 19 conference, defense counsel advised Judge Trager that he and Lucky had not made a decision about the disposition of the case because Lucky's priority had been an application for bail. Hr'g Tr., May 19, 2005, at 2. Judge Trager referred the bail application to a magistrate judge and excluded time, stating: "I'm excluding time for negotiations." *Id.* at 4. At the June 23 conference, defense counsel indicated that trial was likely, Hr'g Tr., Jun. 23, 2005, at 2, and Judge Trager set a briefing schedule on Lucky's motion to suppress the firearm, *id.* at 5-6. Lucky filed his motion on July 29, 2005. ECF No. 102. Oral argument was held on September 8, 2005, and continued on October 3, after which Judge Trager denied the suppression motion from the bench. ECF Nos. 21, 22.

C.          *The Motion to Dismiss Under the Speedy Trial Act*

By motion dated January 3, 2007, Lucky, through new counsel Harry C. Batchelder, moved to dismiss the indictment because the government had not commenced trial within the seventy non-excludable days provided by the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161-3174. Lucky's motion focused on the period in 2005 that culminated in the filing of Lucky's motion to suppress on July 29, 2005. Judge Trager denied the motion to dismiss from the bench, stating: "I am quite certain it wasn't violated because a lot of the exclusion had to do with the making of the motion and plus the psychiatric review and a whole bunch of stuff." Trial Tr. 40. Judge Trager added: "I didn't count a violation." *Id.*

D.          *The Trial and the Sentencing*

After a two-day trial, Lucky was found guilty of the felon-in-possession charge. In its Presentence Investigation Report ("PSR"), the Probation Department ("Probation") originally calculated Lucky's base offense level to be twenty-two pursuant to § 2K2.1(a)(3)(B) of

3

the United States Sentencing Guidelines ("Guidelines"). Resp't's Br. Ex. G, ¶ 10. Subsection (a)(3)(B) applies to offenses where "the defendant committed any part of the instant offense subsequent to sustaining *one* felony conviction of either a crime of violence or a controlled substance offense." Guidelines § 2K2.1(a)(3)(B) (emphasis added). Probation amended that calculation after the government alerted it that a New York State conviction for attempted possession of a controlled substance qualified under the Guidelines as a second crime of violence or controlled substance offense. Resp't's Br. Ex. H, at 1. Accordingly, Probation assigned a base offense level of twenty-four under § 2K2.1(a)(2). *Id.*; *see* § 2K2.1(a)(2) (providing a base offense level of twenty-four "if the defendant committed any part of the instant offense subsequent to sustaining *at least two* felony convictions of either a crime of violence or a controlled substance offense" (emphasis added)). Probation also assessed a two-level enhancement pursuant to § 2K2.1(b)(4)(A) because the firearm Lucky possessed had been stolen, resulting in a total offense level of twenty-six. Resp't's Br. Ex. G, ¶ 11. Given a criminal history category of VI, the resulting Guidelines range was 120 to 150 months, but that was subject to the ten-year statutory maximum provided by 18 U.S.C. § 924(a)(2). Resp't's Br. Ex. H, ¶¶ 46-47.

      Defense counsel objected to the PSR, arguing that the stolen-firearm enhancement should not apply since there was no evidence at trial that Lucky knew the weapon was stolen. Resp't's Br. Ex. I, at 2-8. Counsel asserted that the cases the government relied on for the constitutionality of the enhancement in the absence of scienter had no more validity after the Supreme Court's decisions in *Apprendi*, *Blakely* and *Booker*. Judge Trager accepted the Guidelines range but departed from it and imposed a ninety-six month term of imprisonment, stating: "For the sake of your sister and the burden that you have put on her, in addition to all her other burdens, I'm going to give you a moderate reduction from really what you should serve, the

full 120 months. But because of the burden that your sister bears, I think I maybe doubt whenever you get out you will be of any help, but maybe something will happen. Maybe a miracle." Resp't's Br. Ex. J, at 26.

E. *The Appeal*

Lucky filed a timely appeal, arguing that (1) the *Terry* stop was unreasonable; (2) he was subjected to a Speedy Trial Act violation; (3) he did not knowingly and effectively waive his presence at voir dire; and (4) the court did not have jurisdiction because Lucky's offense conduct was insufficient to establish the requisite interstate commerce nexus. Regarding his speedy trial argument, Lucky conceded that time was excluded from the 70-day speedy trial clock until May 19, 2005, because Judge Trager made a finding on the record that time would be excluded in the "interests of justice" at the February 23 and March 31 appearances. Def't's App. Br. ("Lucky App. Br.") 32. Lucky challenged the adequacy of the finding at the May 19 conference, *id.* at 32-33, apparently contending that even though Judge Trager intended to exclude time for plea negotiations, he did not make the requisite "ends of justice" finding.

The Second Circuit affirmed the conviction. Regarding the speedy trial argument, it held that even if May 19 were used as the starting point of the period of delay, Lucky could, "at most, identify only 69 nonexcluded days." *United States v. Lucky*, 569 F.3d 101, 107 (2d Cir. 2009), *petition for cert. denied*, 78 U.S.L.W. 3548 (U.S. Mar. 22, 2010) (No. 09-6531). This was because the status conference on June 23, 2005, made that day automatically excludable under § 3161(h)(1), which excludes time from speedy trial consideration for certain proceedings concerning a defendant. *Id.*

F. *The Instant Motion*

Lucky now argues that his trial counsel was ineffective. Specifically, he alleges that counsel should have pointed out the government's failure to commence trial within the seventy non-excludable days provided by the Speedy Trial Act. Second, Lucky asserts that counsel should have argued that the weapon he was found with was not a "firearm" as defined by § 2K2.1 of the Guidelines. Finally, he claims that counsel should have argued that the two-level enhancement pursuant to § 2K2.1(b)(4)(A) should not have applied because the government did not prove that Lucky knew the firearm was stolen.

Judge Trager ordered Lucky's three trial counsel to respond to his allegations by affidavit. Two of the three stated their belief that the Speedy Trial Act was not violated during the time they represented Lucky. Krinsky Aff. ¶¶ 6-7; Padden Aff. ¶ 3. The third, Batchelder, had of course raised the alleged Speedy Trial Act violation in a motion to dismiss. Regarding the stolen-firearm enhancement, Batchelder stated that, contrary to Lucky's assertion, he had indeed objected to the enhancement before sentencing. Batchelder Aff. ¶ 3.

An oral argument was held on the instant motion on April 5, 2011, at which Lucky appeared by video conference. Lucky stated that he did not have anything to highlight at the time and would submit a written reply to the government's opposition brief. Tr. of Oral Arg., Apr. 5, 2011, 4-5.

In his reply brief, Lucky recapitulates his Speedy Trial Act claim but appears to abandon his argument based on the definition of "firearm" in § 2K2.1 of the Guidelines. *See* Reply Br. 6 ("[The] Government appears to trip over the claim by opposing 'Lucky [sic] claim that the weapon is not a firearm.' The statement makes absolutely no sense, nor is such a claim before the court."); *id.* at 7 ("For the record, Lucky does not challenge the fact of whether or not

6

the weapon was a firearm . . . ."). Instead, Lucky suggests that Batchelder should have objected to the base offense level of twenty-four because he did not have a second felony conviction as that term is defined by § 2K2.1 of the Guidelines. Because this claim was not raised in his § 2255 motion, the government did not respond to it. However, Batchelder addresses the argument in his affidavit in response to Judge Trager's order to show cause. Batchelder points out that Lucky had three qualifying convictions (one more than is required by § 2K2.1(a)(2)): one crime of violence and two controlled substance offenses. Batchelder Aff. ¶¶ 4-8.

DISCUSSION

A.  *Ineffective Assistance of Counsel Standard*

In order to prove ineffective assistance of counsel, Lucky must demonstrate: (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). With respect to the performance aspect of the *Strickland* test, Lucky "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. This Court must be "highly deferential" to counsel's performance; Lucky "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). To establish prejudice under *Strickland*, Lucky must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

B.  *The Speedy Trial Argument*

Lucky's claim that counsel unreasonably failed to raise the speedy trial issue is without merit. First, as discussed above, Batchelder moved for dismissal of the indictment

pursuant to the Speedy Trial Act in Lucky's pretrial motion to dismiss. Second, he had no reason to argue that there existed additional non-excludable days before July 29, 2005.[2]

> Section 3161 provides:
>
> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1). The seventy-day time frame for commencing trial, however, is subject to certain exclusions of time provided by subsection (h). Some are automatic, like exclusions for other proceedings concerning the defendant. *Id.* § 3161(h)(1). Others require the judge granting a continuance to make a finding that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* § 3161(h)(7)(A). "Although the Speedy Trial Act is ambiguous as to when findings supporting an ends-of-justice continuance must be set forth, 'the Act is clear that the findings must be made, if only in the judge's mind, before granting the continuance' and that 'those findings must be put on the record by the time a district court rules on a defendant's motion to dismiss under § 3162(a)(2).'" *Fairley v. United States*, No. 08 Civ. 3823, 2011 WL 1097537, at *6 (S.D.N.Y. March 22, 2011) (quoting *Zedner v. United States*, 547 U.S. 489, 506–07 (2006)).

Because Lucky argues that the seventy days provided by the Speedy Trial Act expired on or before June 23, 2005, he implicitly contends that the non-excluded period of delay started on April 14 at the latest. The Second Circuit has already rejected this starting date. The

---

[2] In his memorandum of law, Lucky claims that more than seventy non-excludable days had elapsed as of June 23, 2005. Mem. of Law 4. In his reply brief, he argues that eighty-six non-excludable days had elapsed as of May 19, 2005. Reply Br. 3. Because "the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*,'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in *Triestman*) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)), I read these statements to mean that Lucky faults Batchelder for not pointing out additional non-excludable days in his motion to dismiss.

Speedy Trial Act takes into account the entire period "from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending" to the date of trial. Implicit in the Second Circuit's finding that Lucky could at most demonstrate sixty-nine days of delay was the conclusion that the only non-excluded days occurred between May 19, 2005, and July 29, 2005. Indeed, Lucky conceded in his appellate briefs that May 20, 2005, was the first day of the non-excluded period, indicating that the record reflected that Judge Trager made the required "ends of justice" findings in granting continuances at the February 23 and March 31 appearances. Lucky App. Br. 32. Moreover, at the time in 2007 when Judge Trager denied the motion, he made the required "ends of justice" finding as to the period of delay which began on May 20, 2005, stating: "I am quite certain [the Speedy Trial Act] wasn't violated because a lot of the exclusion had to do with the making of the motion . . . ." Trial Tr. 40.[3] (He presumably was referring to Lucky's motion to suppress that was filed on July 29, 2005.) The Second Circuit's holding does not contradict this finding because it concluded that Lucky could *at most* demonstrate sixty-nine non-excluded days. *Lucky*, 569 F.3d at 107. To the extent that Lucky claims that counsel was ineffective for arguing that the Speedy Trial Act was violated by July 29, 2005, instead of June 23, he does not demonstrate that counsel acted unreasonably.

C.     *The Stolen Firearm Sentencing Enhancement*

Lucky's assertion that counsel was ineffective for failing to argue that the stolen weapon enhancement should not have applied to Lucky because he did not know it had been stolen is unavailing essentially for the same reason: counsel actually made the argument. Judge

---

[3] All of the prior proceedings in this case, including the direct appeal, predated *Bloate v. United States*, 130 S. Ct. 1345 (2010), in which the Supreme Court held that the time to prepare motions for filing is not automatically excluded from the 70-day time limit. *Id.* at 1351-52 (abrogating *United States v. Oberoi*, 547 F.3d 436 (2d Cir. 2008)). I need not determine whether the outcome here would have been different if *Bloate* had been decided earlier; it suffices to say that counsel cannot be considered ineffective for failing to anticipate it.

Trager applied the enhancement despite counsel's objection, and the Second Circuit has since reaffirmed its prior holding that a defendant need not be aware that the firearm was stolen in order for the enhancement to apply. *United States v. Thomas*, 628 F.3d 64, 69 (2d Cir. 2010).

D. *The Definition of Firearm Under § 2K2.1(a)(2)*

Lucky's next contention is that counsel was ineffective at sentencing for failing to argue that the gun he possessed when he was arrested did not qualify as a firearm as that term is defined in § 2K2.1 of the Guidelines.[4] The argument is based on the premise that a qualifying weapon under § 2K2.1 is anything listed in 26 U.S.C. § 5845. But Application Note 1, which provides the definitions for § 2K2.1, states that "firearm" is defined in 18 U.S.C. § 921(a)(3). Section 921(a)(3), in turn, provides: "The term 'firearm' means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device." Lucky's Star nine millimeter semi-automatic handgun squarely fits within this definition. *See United States v. Gutierrez-Silva*, 983 F.2d 123, 125 (8th Cir. 1993) (unloaded Star nine millimeter handgun a firearm as defined by § 921(a)(3)). His counsel was not deficient when he failed to contend otherwise.

E. *The Second Prior Conviction*

Lucky's final claim is that Batchelder was ineffective for not arguing for the application of a base offense level of twenty-two, rather than twenty-four. As noted, Probation arrived at the latter offense level after the government indicated that Lucky had two, not one, felony convictions of either a crime of violence or a controlled substance offense. Lucky concedes that one of the prior felony convictions --- his 1992 New York State assault ---

---

[4] As noted, Lucky seems to abandon this argument in his reply brief. Nonetheless, as set forth in the text, the argument has no merit.

10

qualified as a prior offense as defined by § 2K2.1 of the Guidelines. *See* Reply Br. 6 ("Lucky only has one qualifying prior offense, that is[] assault with the intent to cause physical injury with a weapon."). But he contends that his second conviction --- of attempted criminal possession of a controlled substance in the third degree in 2001 --- did not qualify because it was a simple possession offense. This assertion is erroneous.

Section 2K2.1 of the Guidelines provides the offense levels that apply to certain firearm convictions, including those for being a felon in possession of a firearm. Under that provision, a base offense level of twenty-four applies "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." Guidelines § 2K2.1(a)(2). The application note to § 2K2.1 defines "felony conviction" as "a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed." *Id.* § 2K2.1 cmt. n.1. The definition of the term "controlled substance offense," which incorporates by reference § 4B1.2(b) and the application note to that section, *id.*, is "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense," *id.* § 4B1.2(b), and "include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses," *id.* § 4B1.2 cmt. n.1.

Under New York law, "[a] person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses . . . a narcotic drug

11

with intent to sell it." N.Y. Penal Law § 220.16(1). Cocaine is a narcotic drug as defined by New York State. *Id.* § 220.00(7); N.Y. Pub. Health Law § 3306 sched. II (b)(4). Attempt to commit the crime of possession of a controlled substance in the third degree is a Class C felony. N.Y. Penal Law § 220.16; *see id.* § 110.05. The maximum term of imprisonment for a Class C felony is fifteen years. *Id.* § 70.00(2)(c).

In 2001, Lucky was convicted of attempted criminal possession of cocaine in the third degree. This was not a simple possession offense but rather a crime of possession with intent to sell, punishable by imprisonment for a term of fifteen years. The conviction fit within the definitions of felony conviction and controlled substance offense, and Probation properly applied a base offense level of twenty-four. Had Batchelder objected to that offense level, his objection would have been frivolous. He thus did not act unreasonably by failing to do so.

## CONCLUSION

I have considered all of Lucky's arguments and found them to be meritless.[5] Accordingly, the § 2255 motion is denied. As Lucky has not made a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue.

So ordered.

John Gleeson, U.S.D.J.

Dated: May 25, 2011
      Brooklyn, New York

---

[5] Because they lack merit, I need not address whether Lucky's arguments have been procedurally defaulted.

12